# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| ROBERTA LOWE, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | Civil Action No. SA-17-CV-1230-XR |
| § | |
| MAC FEDERAL CREDIT UNION, § | |
| § | |
| *Defendant.* § | |

## ORDER

On this date, the Court considered the Motion to Dismiss Pursuant to Rule 12(b)(2) and 12(b)(3) or to Transfer Venue Pursuant to 28 U.S.C. §§ 1404(a) and/or 1406(a), and Alternative Motion to Dismiss Pursuant to Rule 12(b)(6) (docket no. 7). After careful consideration, the Court GRANTS the motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction and dismisses the remainder of the motion as moot.

### Factual and Procedural Background

Plaintiff Roberta Lowe filed her Original Complaint on December 4, 2017 alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). At some unspecified time, Plaintiff entered into an auto loan agreement with Defendant MAC, a not-for-profit credit union headquartered in Alaska. At a later unspecified time, she moved to Texas. Plaintiff's Original Complaint alleges that on or about June 2017, Defendant had been credit reporting on Plaintiff's credit report for the auto loan, on which Plaintiff had fallen behind and owed $8,603. The Original Complaint alleged that MAC then sold the note or transferred it to a third-party collection agency, R.A. Rogers, for collection. However, despite transferring or selling the note, Defendant continued reporting the debt and the balance owed to each of the three credit reporting agencies, while R.A. Rogers reported the same debt, making it appear that Plaintiff had double her true delinquency.

Plaintiff's Original Complaint alleges that she disputed the information with each of the three credit reporting agencies, who forwarded the disputes to MAC, yet MAC failed to

conduct a reasonable investigation, continued to report the trade line as accurately reflecting a balance, and failed to report the trade line as one in dispute. Plaintiff alleges that she has suffered emotional and financial injury, and asserts a single count under the FCRA, alleging that "Defendant willfully and negligently failed to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2b." Section 1681s–2(b) of the FCRA details the duties of furnishers of credit information once they have been notified of a dispute with regard to the accuracy of information provided to a consumer reporting agency. *Smith v. Nat'l City Mortgage*, No. A-09-CV-881-LY, 2010 WL 3338537 (W.D. Tex. Aug. 23, 2010).

Defendant MAC moved to dismiss the Complaint pursuant to Rules 12(b)(2) and 12(b)(3), or to transfer venue to the United States District Court for the District of Alaska, Fairbanks Division pursuant to 28 U.S.C. § 1404(a) and/or 1406(a). In its motion, MAC contends that it is not subject to personal jurisdiction in this District and that this District is an improper venue. Thus, it contends that the Complaint should be dismissed or, alternatively, the case should be transferred to Alaska. Alternatively, MAC moves to dismiss the complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

Plaintiff sought an extension of time to respond to the motion to dismiss, and eventually filed an Amended Complaint rather than a response. Under the "Parties" section, the Amended Complaint alleges that Defendant is a credit union doing business in Texas, with its principal place of business in Fairbanks, Alaska. *Id.* ¶ 5. It further alleges upon information and belief that "Defendant regularly services military members that travel to different states, including Texas, and continues to maintain accounts for these Texas residents and allow these consumers to use their services for financial activity while in Texas, or on military bases of other states." *Id.*

The "Factual Statement" portion of the Amended Complaint no longer alleges that MAC sold or transferred the debt to R.A. Rogers, but instead alleges that MAC hired Rogers to collect on the debt as its agent, and that Rogers attempted to collect the debt from Plaintiff in Texas through the use of collection letters and the placement of a trade line on her credit report. *Id.* ¶¶ 8-9. Plaintiff alleges upon information and belief that Defendant MAC controlled the details of how, when, and where Rogers was to collect the debt, based on common industry practice, and that MAC "specifically provided rules to R.A. Rogers concerning how, when,

and what can and cannot be credit reported concerning Plaintiff's account." *Id.* ¶¶ 10-12. Plaintiff alleges that MAC reported the debt and allowed Rogers to report the debt and balance owed to each of the three credit reporting agencies, making it appear that Plaintiff had double her actual delinquency. *Id.* ¶¶ 13-15.

The Amended Complaint further alleges that, after reviewing her account, Plaintiff inquired of MAC, from Texas, concerning the debt, and Defendant stated that all further information concerning the account could be obtained from R.A. Rogers. *Id.* ¶ 17. Plaintiff disputed the information with each of the credit reporting agencies by mail from Texas, and stated that her current residence was Texas. *Id.* ¶ 18. The credit reporting agencies forwarded the disputes in an automated form, which contained Plaintiff's current address and "put Defendant on notice of Plaintiff's residence." *Id.* ¶ 19. However, Plaintiff alleges, "Defendant continued reporting the trade line purposefully directed towards Plaintiff while Defendant knew Plaintiff was in Texas." *Id.* ¶ 21.

MAC then filed a Supplemental Motion (docket no. 11), asserting that Lowe failed to comply with the local rules by filing a response to the original motion and thus dismissal was appropriate, and arguing that the Amended Complaint still fails to establish personal jurisdiction and venue. Lowe responded to the supplemental motion, asserting that no response was required to the motion because an Amended Complaint was filed addressing the bases for the motion, mooting the motion. Lowe asserted that she would treat the supplemental motion to dismiss as a renewed motion incorporating the original arguments for her response. Lowe argued that MAC is subject to personal jurisdiction in this Court and that venue is proper here.

This Court then issued a text order mooting the original motion to dismiss, noting that Plaintiff timely filed an Amended Complaint as of right pursuant to Rule 15(a)(1)(B), which permits a plaintiff to file an amended complaint within 21 days of a motion to dismiss under Rule 12(b), and that any technical failure to separately respond to the motion pursuant to the local rule would not justify granting the motion. Thus, the Court mooted the original motion and treated the supplemental motion as a renewed motion to dismiss incorporating the original arguments. After receiving several extensions, MAC then filed its Reply to the motion to dismiss on March 9, 2018. The motion is now ripe for disposition.

## Analysis

Because jurisdiction is a threshold inquiry, the Court first determines whether MAC is subject to personal jurisdiction in Texas. At this stage, Plaintiff is required to make a *prima facie* showing of personal jurisdiction. *Central Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). Plaintiff alleges that MAC is subject to both specific and general personal jurisdiction in Texas. MAC asserts that it is not subject to either specific or general personal jurisdiction because it is "at home" in Alaska and is not at home in Texas, and all conduct complained of occurred in Alaska. MAC provides the affidavit of Jacqueline Haskins, the Collections Manager for MAC, in support of its motion to dismiss.

### A. General Personal Jurisdiction

The Supreme Court recently considered the requirements to establish general jurisdiction in *Daimler AG v. Bauman*, 571 U.S. 117 (2014). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 128 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The inquiry is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* With respect to a corporation, the place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction"; they are unique and easily ascertainable, and afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims. *Id.* It is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

It is undisputed that Defendant MAC is a not-for-profit Credit Union, which is chartered to operate in Fairbanks North Star Borough, Alaska, and its principal and only places of business are in Alaska. MAC is therefore "at home" in Alaska. MAC asserts that it does not have and never has had a business or professional presence or facility or office in Texas and is not registered with the Texas Secretary of State to do business in Texas. MAC

asserts that it does not do business in Texas, has no business premises or employees in Texas, or any other contacts with Texas. Membership in the credit union is limited to persons who live, work, worship, use services, or attend school in the Fairbanks-North Star Borough; businesses and other legal entities located in the Fairbanks-North Star Borough; members of the Association of the United States Army – Polar Bear Chapter; and any member's immediate family by blood or marriage. MAC membership carries lifetime benefits and may be retained, even if the member moves from Fairbanks. MAC further asserts that it does not perform debt collection activities in Texas or advertise its services or solicit members in Texas.

Nevertheless, Plaintiff contends that MAC is subject to general jurisdiction because it "engaged in a substantial, continuous and systematic course of business in Texas." Docket no. 12 at 10. Plaintiff argues that "MAC's affiliations with Texas are so pervasive as to render it essentially at home in the state and justify this Court's exercise of jurisdiction over it." *Id.* Plaintiff alleges that: "Defendant has more than sufficient contacts with Texas"; MAC has purposefully directed and initiated activity to the State"; upon information and belief, MAC has several account holders located in Texas; each of these account holders either receives regular statements or collection notices in Texas; and "these contacts are so common and continuous that MAC is essentially at home while conducting business in Texas." Docket no. 12 at 11.

The first two of these allegations are conclusory rather than factual. The only factual allegations are based on the fact that MAC membership can be maintained even after customers move away to other states such as Texas, and thus MAC has "several account holders located in Texas" who have customer relationships with MAC. But the fact that some of its member customers may be in Texas is insufficient to show that MAC is "at home" in Texas. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) (communications, wire transfers, and phone calls with customers with a tie to Texas will not establish general jurisdiction).

MAC did not solicit customers in Texas or direct contacts purposefully to Texas; it has no control over where its members may choose to move. And the fact that a foreign defendant has some customers or does some business within the forum state, even if somewhat continuous, is not sufficient to establish continuous and systematic contacts of the type

necessary for general jurisdiction. *Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 230 (5th Cir. 2012) (foreign defendant who had sporadic and attenuated contacts with Texas through intermittent communications over a four-year period and sales totaling approximately $915 insufficient for general jurisdiction); *Ray v. Experian*, No. 3:07-CV-1114, 2007 WL 4245459 (N.D. Tex. Nov. 30, 2007) ("[A]lthough having customers in Texas may constitute an act of doing business with Texas, BB & T has no 'continuous and systematic' contacts which constitute doing business in Texas."). Even regular purchases or business dealings are not enough to warrant an assertion of general jurisdiction in a cause of action not related to those transactions. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 418 (1984).

MAC is in no sense "at home" in Texas, and Texas is not a forum in which it would be permissible to subject MAC to general jurisdiction.

B. **Specific Personal Jurisdiction**

The specific jurisdiction inquiry focuses on the relationship among the defendant, the forum, and the litigation. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). The relationship must arise out of contacts that the defendant creates with the forum state, and the focus is on the defendant's contacts with the forum state, not persons who reside there. *Id.* at 1122. The plaintiff cannot be the only link between the defendant and the forum. *Id.*

MAC contends that all activity of MAC of which Plaintiff complains was conducted in Alaska, that it did not purposefully reach out to Texas, and that any connections to Texas were created by Plaintiff, not MAC, such that specific jurisdiction is not established. Plaintiff raises three arguments in support of her position that MAC is subject to specific personal jurisdiction in Texas. She contends that specific jurisdiction is established through MAC's own conduct when it placed a trade line on Plaintiff's credit report and subsequently verified the account information to the credit bureaus while knowing Plaintiff resided in Texas. She further contends that MAC is subject to personal jurisdiction in Texas "because the debt was part of the Stream of Commerce and it was foreseeable that Plaintiff would be in Texas." Docket no. 12 at 8. And she asserts that specific personal jurisdiction is established through MAC's agency relationship with R.A. Rogers because R.A. Rogers attempted to collect on the debt while Plaintiff resided in Texas and had purposeful contacts with Texas. The Court will first

examine whether MAC's own contacts are sufficient to establish specific personal jurisdiction for Lowe's FCRA claim, and then address the agency argument.

<u>MAC's conduct - placing a trade line and "stream of commerce" arguments</u>

Plaintiff contends that specific jurisdiction is established through MAC's own conduct when it placed a trade line on Plaintiff's credit report and subsequently verified the account information to the credit bureaus while knowing that Plaintiff resided in Texas. Plaintiff contends "the mere act of reporting on a debt while the Plaintiff was in Texas is sufficient to establish minimum contacts with the forum" because MAC knew Plaintiff's address was in Texas at the time. Docket no. 12 at 7. Plaintiff contends that MAC intentionally responded to the credit reporting agencies in the dispute process, knowing that Plaintiff resided in Texas, with specific intent that the item remain on her credit report, and thus "MAC desired the item to remain on Plaintiff's report negatively to induce payment from her, while knowing Plaintiff resided in Texas." Docket no. 12 at 7-8.

Plaintiff further contends that many of MAC's contractual relations with consumers move and extend beyond the state of Alaska, and in this case, "that relationship was carried to Texas by Defendant." Plaintiff argues, "Since it was foreseeable that a consumer would move to another jurisdiction, specifically Texas, an injury arising from reporting on that consumer's debt would give Texas jurisdiction over Defendant." Docket no. 12 at 8. Plaintiff asserts that the "the Fifth Circuit has consistently held that 'mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." Docket no. 12 at 8. Thus, she contends, parties "who reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to personal jurisdiction in that forum. *Id.* Plaintiff also cites *Travelers Health Association v. Virginia*, 339 U.S. 643, 647 (1950).

MAC disputes that it was even aware that Plaintiff resided in Texas at the time of alleged actions. It states that Plaintiff incurred the debt while using the name Roberta Louise Stevens, which was the name shown in MAC's records at the time this suit was filed, and until then MAC was unaware that she had become Roberta Lowe. Further, her last known address on file at the time suit was filed was in California. Thus, MAC contends it was not even aware that Plaintiff was living in Texas until suit was filed. But even assuming MAC was "on notice"

7

that Plaintiff was living in Texas, as Plaintiff contends, she has not made a prima facie showing of any act by which MAC purposefully availed itself of the privilege of conducting activities within Texas, so as to invoke the benefits and protections of its laws.

The unilateral activity of a plaintiff who claims some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. The fact that Lowe moved to Texas and maintained her relationship with MAC, even if it was foreseeable to MAC that she might do so, is insufficient. It is well settled that a contractual relationship, standing alone, cannot establish minimum contacts. *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (merely contracting with a resident of the forum state does not establish minimum contacts). Nothing about the relationship between Plaintiff and MAC concerns Texas specifically. They did not contract in Texas and did not contemplate that the contract would be performed in Texas. *Burger King*, 471 U.S. at 478 (contract may be sufficient if defendant envisioned continuing and wide-reaching contacts in the forum state through the contract). Similarly, the fact that other MAC members may have moved to Texas and maintained their relationships with MAC does not demonstrate purposeful availment by MAC. *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014) ("To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with persons affiliated with the State." *Id.*

Further, the fact that MAC reported a trade line on Lowe's credit report and verified it in response to her dispute does not establish any purposeful contacts with Texas. Any reporting to the credit bureaus was done by MAC in Alaska to no one in Texas. Haskins' affidavit states that all conduct of MAC relating to its collection, reporting, and investigating this debt occurred in Alaska, and any acts of MAC relating to Plaintiff's allegations consisted of communications between MAC and the consumer credit reporting agencies and MAC's investigations of its own records, which took place in Alaska. MAC asserts that, after engaging R.A. Rogers' services to collect the debt for MAC, MAC never sent Plaintiff a

demand letter, fax, or email in Texas or anywhere else or made a phone call to Texas, and never initiated any communication with Plaintiff while she resided in Texas.

Plaintiff's argument is based on her assertion that MAC intended to injure her when it reported the trade loan, was on notice from the credit bureaus that she was residing in Texas and so must have known it would injure Plaintiff in Texas by doing so, and thus intended to injure her (or coerce her) in Texas. However, MAC did not purposefully reach out to Texas in any way, and did not intend to injure Plaintiff specifically in Texas. Rather, her location in Texas was fortuitous because at some point after acquiring this debt, Lowe moved to Texas. When Lowe noticed what she thought was double reporting of her debt, she contacted the credit bureaus, who then forwarded her dispute to MAC. MAC's responding to a communication initiated by Lowe's disputing the record in Texas is insufficient to confer jurisdiction. All actions of MAC in response occurred in Alaska, and any communications complained of were directed to the credit reporting agencies, not Lowe in Texas. To the extent MAC might have been aware that Lowe was residing in Texas at the time it communicated with the credit bureaus, such knowledge is insufficient to establish minimum contacts. *See Ray*, 2007 WL 4245459, at *3 ("Ray has alleged that BB&T's electronic communication with Experian's computer servers in Texas concerning Ray's credit report subjects BB&T to specific jurisdiction. However, accessing or sending data in North Carolina to or from a database which happens to be headquartered in Texas is not a purposeful availment by BB&T of the benefits and protections of Texas' laws.").

Plaintiff's reliance on the stream-of commerce metaphor in inapposite to this FCRA case. "The stream-of-commerce metaphor has been invoked frequently in lower court decisions permitting 'jurisdiction in products liability cases in which the product has traveled through an extensive chain of distribution before reaching the ultimate consumer.'" *Goodyear Dunlop*, 564 U.S. at 926. "Typically, in such cases, a nonresident defendant, acting *outside* the forum, placed in the stream of commerce a product that ultimately causes harm *inside* the forum." *Id.* But this is not a products liability case. Plaintiff's reliance on *Travelers Health Association v. Commonwealth of Virginia*, 339 U.S. 643 (195) is also misplaced. In that case, the defendant business actively solicited members in Virginia and thus was reaching out to

9

create continuing relationships and obligations with citizens of that state sufficient to be subject to regulation by that state.

The applicable line of authorities is in tort actions. In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court applied specific jurisdiction principles in the tort context, specifically libel. The Court upheld the specific jurisdiction of a California court over Florida defendants based on the allegedly libelous effect of their Florida conduct in California. As the Court recently explained, there were ample forum contacts created by the defendants in writing the story, and California was the focal point of both the story and of the harm suffered. *Walden*, 134 S. Ct. at 1123. While Calder dealt with the intentional tort of libel, the Fifth Circuit has applied the "effects test" to other tort cases. *Kwik-Kopy Corp. v. Byers*, 37 F. App'x 90 (5th Cir. 2002).

However, the Fifth Circuit has clarified that "*Calder*'s 'effects test' is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state," and that the foreseeability of harm in the forum is not sufficient to establish specific jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001). The effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum and allegations that relate only to the foreseeability of causing injury in Texas are not sufficient. *Id.* at 869. *Walden* reaffirms this principle, holding that knowledge that a party will suffer foreseeable harm in the forum "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 134 S. Ct. at 1125. It held, "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum" and "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* As in *Walden*, Plaintiff was injured in Texas solely because she was there at the time, and would have suffered the same injury wherever else she might have found herself. *Id.* With nothing more than an alleged foreseeable injury in the forum, specific jurisdiction is lacking.

Agency

Plaintiff contends that R.A. Rogers' contacts can be imputed to MAC to establish specific jurisdiction. A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state. *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009). Plaintiff asserts that she has sufficiently alleged agency, and the issue is more appropriate for resolution at a later time or by a jury after discovery. MAC contends that Lowe's agency allegations are insufficient to establish personal jurisdiction because she admits that her characterization of R.A. Rogers as MAC's agent is wholly speculative and based on only information and belief and her wholly unsupported and conclusory understanding of common industry interaction. MAC contends that Lowe pleads no facts to support her conclusory allegations, nor could they have been pled in good faith.

MAC provides Haskins' affidavit clarifying that the relationship between MAC and Rogers is that of business contractor and contractee, nothing more, and that MAC does not control the details of how, when, and where Rogers collects debts. MAC asserts that it had no control over the details of Rogers' collection activities, and never approved or ratified any allegedly wrongful activity (or any other activity) of Rogers. MAC states that, when stripped of its mere conclusions and reviewed for specific facts, nothing the First Amended Complaint states a plausible claim of agency sufficient to support personal jurisdiction.

The Court agrees that Plaintiff's agency allegations are speculative and insufficient to establish a prima facie case. Although Plaintiff asks to be permitted to conduct discovery on agency, such discovery would be futile because, even taking as true that R.A. Rogers was acting as MAC's agent in engaging in its debt collection activity, that fails to establish specific personal jurisdiction as to Lowe's *FCRA* claim against MAC. Lowe cites to a number of cases "that associate an agency relationship with the collection activities of debt collectors," docket no. 12 at 5, but overlooks the critical point that each of those cases involved claims under the Fair Debt Collection Practices Act, not the FCRA. To establish her FCRA claim under § 1681s–2(b), Plaintiff must demonstrate that: (1) she notified a consumer reporting agency of inaccurate information; (2) the consumer reporting agency notified the Defendant of the dispute; and (3) the Defendant failed to conduct an investigation, correct any inaccuracies and failed to notify the consumer reporting agency of the results of the investigation. Specific

jurisdiction is claim specific, and thus the relevant contacts are those underlying the elements of the FCRA claim at issue, not debt collection activity, even if related. Plaintiff's FCRA claims do not arise from the debt collection contacts, and Plaintiff does not bring a claim for violations of the FDCPA. Thus R.A. Rogers' actions with regard to debt collection are irrelevant, even if purposefully directed at Plaintiff in Texas and even if controlled by MAC.

The alleged relevant conduct of R.A. Rogers for the FCRA claim is only that it reported a trade line to the credit bureaus, which is insufficient to establish personal jurisdiction for the same reason that MAC's conduct is insufficient. To the extent Plaintiff alleges that, "MAC did not instruct R.A. Rogers to cease reporting on the debt or inform the Credit Bureaus that the account should not be reporting twice" and "indicated to the Credit Bureaus R.A. Rogers was authorized to collect on the debt," this conduct by MAC occurred in Alaska and was not purposefully directed at Texas, and does not establish specific jurisdiction.

## Conclusion

Accordingly, Plaintiff fails to establish a prima facie case of specific or general personal jurisdiction, and MAC's 12(b)(2) motion is granted. Because the Court finds that it lacks personal jurisdiction over MAC, it does not reach the venue arguments, motions to transfer, or 12(b)(6) motion.

MAC's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction is GRANTED and this case is DISMISSED FOR LACK OF JURISDICTION. The remainder of the motion is DISMISSED AS MOOT. The Clerk is directed to enter judgment and close this case.

It is so ORDERED.
SIGNED this 29th day of May, 2018.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE